No. 12,975.

LEVERT, BURGUIERES & CO. vs. AMEDEE N. HEBERT; INTERVENTION OF MRS. AGNES LEE HEBERT.

SYLLABUS.

Plaintiffs alleging themselves to be owners of certain described movables, averring that they are in the possession of defendants and praying to be put in possession of the articles enumerated as their property, show a cause of action

It does not follow, because no money actually passed between the parties at the time of the sale, that therefore the sale was unreal. (C. C. 1900; Weld vs. Peters, 1 Ann. 432.) A pre-existing debt due by the transferrer of property to his transferree, supports the transfer.

O N APPEAL from the Fourteenth Judicial District Court for the Parish of Iberville. *E. B. Talbot, J.*

*Lozano & Hebert* for Plaintiffs and Appellees.

*Hebert & Hebert* for Defendant and Intervenor, Appellants.

Argued and submitted November 20, 1898.
Opinion handed down January 9, 1899.
Rehearing refused February 6, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. On or about the 31st of January, 1898, the plaintiffs filed in the District Court, a petition in which they alleged that they were the owners of certain moveable property. That it was then in the possession of defendant, who was unlawfully and illegally holding the same, and absolutely refused to deliver the same to petitioners.

notwithstanding amicable demand. That they feared the defendant having and holding illegal possession of same, would send the same out of the jurisdiction of the court during the pendency of the suit then being brought.

They prayed for a writ of sequestration, for citation upon defendant, and that after due hearing there be judgment in their favor, ordering and directing the sheriff to place them in full and complete possession of their property, and for all general, special and equitable relief.

Defendant excepted that plaintiffs' petition declared no cause, nor right of action. He also moved to have the sequestration set aside on the ground that the allegations of plaintiff's petition were insufficient in law to maintain the action, and that the affidavit annexed to the petition was necessarily insufficient to maintain a sequestration.

The exception and the motion having both been overruled (on the 7th of May, 1898), defendant answered, pleading the general issue. On July 12th, 1898, Mrs. Agnes Lee Robert, wife of the defendant, filed an intervention in the suit in which she alleged that she was married to defendant in 1892, under a marriage contract, which stipulated that there should be no community of property between them. That at various times since her marriage she had had funds and moneys in bank aggregating the sum of forty-two hundred dollars, and that in the course of time she purchased in her own right and name, through her said husband, whom she had authorized to draw checks, drafts, etc., as her agent, all of the property sequestered by the plaintiffs in their suit against her husband. That the plaintiffs averring themselves to be the owners of said property, prayed the court to be put in possession thereof, and averring further that they believed that the defendant, Hebert, would remove the property out of the jurisdiction of the court, had obtained a writ of sequestration, and had had all of said property seized by the sheriff. That having money in bank, as alleged, she bought the machinery, implements, mules and horses sequestered by the plaintiffs; that a certain boiler mentioned, and the thresher, were originally the property of her husband, having been bought by him in the year 1892, and paid for by the plaintiffs, who were then her commission merchants. That finding himself in need of the money in the year 1894, in order to assist him in his planting operations, and thus bear a part of the family expenses, she undertook to furnish the machinery, mules, horses and

implements necessary to make a crop; that at that time she purchased from her husband the boiler and engine and thresher, he using the money to make his crop; that from time to time since 1894, and previously, petitioner had furnished all the machinery, implements and stock necessary to run her husband's business, and had permitted him to make use of the same, thus bearing a part of the expenses; that she had paid with the monies all the repairs, etc., to all the machinery, etc., sequestered by the plaintiff, and during the last year she had used them to make a crop for her own account.

That at the time of the sequestration all of the property seized was in her possession, and they had, in fact, always been in the actual physical possession of herself and her husband, acting as her agent; that she had never made nor authorized any one to make for her a sale of said property; that the plaintiffs had never had possession of said property alleged to be theirs, actual or constructive, therefore their pretended ownership of it is illegal, fraudulent and untrue, and intended to deprive her of her property. That she was the *bona fide* owner of said property. She prayed to intervene the suit; that plaintiffs and defendant be cited; that there be judgment in her favor, decreeing her to be the owner of all said proprty and quieting her possession of same, and that plaintiff's suit be dismissed, and for all and general relief. The intervenor bonded the property sequestered under order of the court.

The defendant, Amede Hebert, answered this intervention, admitting that all the facts and allegations were true and correct; that his wife being separate in property from him, and having monies in her own right, purchased the property described in her petition as therein set forth; that said property had never been out of her possession; that said property was at that time being employed by her in the making of a crop for her account.

The plaintiffs answered the intervention, pleading, first, the general issue.

They averred that they acquired all of the said property by an act *sous seing prive* on the 12th of February, 1897, through their agent, A. K. Grace, from Amede H. Hebert, in good faith and for a free consideration, to-wit: three thousand, three hundred and ninety-two dollars cash. That said act of sale was recorded in Iberville on the 19th of February, 1897. That actual delivery of said property was made to their agent on the 12th of February, 1897, in the presence of

two witnesses, and on the same day said property was leased to said Hebert for the year 1897, at a rental of two hundred and seventy-one 36-100 dollars. That said purchase was made without notice from any one of a claim of ownership thereof. That the record of the sale to themselves was notice to intervenor of said transaction, and she never objected thereto, until the filing of their suit for the recovery of their property. That the marriage contract between intervenor and her husband was never recorded in Iberville parish, nor was any property assessed in intervenor's name in said parish.

They denied that intervenor had ever possessed any money or funds in her own right, as by her alleged; that such funds, if any she had, were funds of her husband, deposited by him in the name of the intervenor in pursuance of and in continuance of a concocted scheme of fraud and simulation; that each and every transaction between intervenor and her husband was a simulation and scheme fraudulently entered into between them for the purpose of shielding the property of the husband from the pursuit of his creditors and to enable him, at his will and pleasure, to fraudulently deceive persons dealing with him, so that he might falsely and fraudulently acquire property and enrich himself and intervenor at the expense of others, and particularly, petitioners. They prayed that the demand of the intervenor be rejected, and that they themselves be decreed to be the owners of all the property, and that they be placed in possession thereof.

The District Court rendered judgment in favor of plaintiffs, recognizing their title to the property described in their petition, and ordered that they be placed in possession thereof. It rejected intervenor's demand. Defendant and intervenor appealed. Appellant contends here that plaintiffs' action was a possessory action for movables, which character of action is expressly disallowed by the Code of Practice.

Plaintiffs alleged themselves to be owners of certain described movables; they averred that they were in the possession of the defendant Hebert illegally; they prayed for citation upon him, and that the court order that they be placed in possession of *their property.*

The prayer substantially was that the court order that the plaintiffs be placed in possession of the articles enumerated as *their property.* The language used might have been more specific and better chosen, but the action was properly permitted to stand as against an *exception*

of no cause of action. If on the trial of the cause it had developed that plaintiffs were advancing their claims merely as *holders* and not as owners of the articles, the action would have properly failed, but the ultimate trial established very clearly (what we think the pleadings themselves sufficiently showed), what the character of plaintiffs' pretensions were. They rested upon an allegation made, and, in our opinion, established of ownership of this property. Plaintiffs showed that by act under private signature (of February 12th, 1897), they purchased from the defendant (intervenor's husband) the personal property involved in this litigation, for the price of $3,392.03; that the act of sale recited the delivery of possession to the purchasers; that on the same day the vendor, Hebert, leased the same property from the plaintiffs for the year 1897, at a rental of two hundred and seventy-one dollars. The intervenor does not pretend to be a creditor of her husband, nor does she contend that she acquired any portion of this property from him with the exception of the boiler and thrasher, and her claim as to this was not attempted to be followed up by proof. Her claim rests upon a direct purchase alleged to have been made by herself of these movables from the dealers selling the same. Under such conditions she is not concerned in knowing whether, at the time Grace acted as the agent of the plaintiffs in making the purchase which he did in their behalf, he then held their power of attorney or not. By claiming the benefit of his acts they have ratified the same. Questions of delivery and price play no part in this controversy. The act *sous seing prive* signed by the defendant and not attacked by him, concludes him as to the transfer and delivery of the property. It does not follow that because no money actually passed between the parties at the time of the sale that therefore the transfer of property was unreal. (C. C. 1900; Wald vs. Peters, 1st Ann. 432). A pre-existing debt due by transferrer of property to his transferrees, supports the transfer. It is contended by intervenor's counsel that she has shown that by marriage contract between herself and her husband it was stipulated there should be no community between them; that she has shown that at the time of the sequestration in this suit she was in possession of the personal property which was sequestered, claiming the same as her property. That under these circumstances, plaintiffs having failed to show adverse title, there was no necessity that she should offer proof of her ownership of the property in dispute.

She maintains, however, that she has shown affirmatively that this

property was purchased for her by her husband, acting as her agent. Neither intervenor nor defendant took the stand as witnesses. No evidence was introduced to show that at the date of her marriage, or at any time since, was she possessed of any paraphernal property or monies, or that she had any industry from which she could acquire property other than a lease to her for one year of the Avery plantation, executed just a few days before the sequestration was issued in this case. In this lease her husband appeared as acting for her under a power of attorney, but the power was not 'annexed to the act, nor was any such power shown to have been executed. It was shown that Amedee N. Hebert opened an account in his own name in the Louisiana National Bank on October 17th, 1894, depositing that day two thousand, five hundred and ninety-one dollars. That at different times between that date and January 14th, (January, 1895) he drew out the whole of this amount except one thousand, three hundred and thirty-six dollars. That on that day he closed his own account and opened an account on the books of the same bank by transferring this balance to the credit of "Mrs. A. N. Hebert," A. N. Hebert, "Agent." That this account had had various deposits placed to its credit between the 14th of January, 1895, and February 1st, 1898, the whole making an aggregate of seven thousand, five hundred and sixteen dollars. That during this time Amede N. Herbert drew constantly against the account, signing the checks "Agent."

From what source Mrs. Hebert acquired these various deposits is not attempted to be explained. It was shown that Hebert, the husband, had himself been in active business as a planter in 1894, and presumably he continued in business thereafter. We find him suddenly closing his bank account and transferring the balance standing to his credit to an account opened in his own name as agent of his wife, to which he could add deposits from time to time as he pleased, and from which he could draw without let or hindrance. It is not shown that Mrs. Herbert personally had anything to do with the opening of this account, nor through what cause she had become entitled to the amount of one thousand, three hundred and thirty-six dollars, with which it opened. She alleges in her intervention that she had authorized her husband to draw checks, as agent, in her behalf, but that statement was not verified in any way.

There was nothing to show that Mrs. Herbert's signature was ever procured by the bank, or that it acted in paying out monies on this

new account under any power of attorney shown to it from the wife. The monies having been *deposited* by the husband himself, as agent of Mrs. A. N. Hebert, the bank obviously recognized the right of the same party to control the fund and to check against it as agent. The wife does not pretend to know when or for what the various checks drawn by her husband were given. She does not attempt to identify any one check as having been given in payment of any particular piece of property. She claims that the whole of this property was in her possession at the time of the sequestration, but the only evidence on this subject is that of the deputy sheriff, who stated that at the time of the sequestration they were on the Avery plantation and being used in the cultivation thereof. It does not follow from that fact that they belonged to her, or that they were in her possession as owner. The husband, (particularly, if he was embarrassed in his planting operations), might well allow his wife, separated in property from him, to be substituted for himself as lessee for the opening year and utilize his mules, ploughs, wagons and farming utensils in making the crop. We are satisfied that no portion of the monies standing on the books of the Louisiana National Bank to the account of Mrs. A. N. Hebert belonged in fact to the wife; but, on the contrary, that they belonged to her husband. That conviction carries with it the affirmance of the judgment appealed from.

The judgment is affirmed.